## HART v. C. D. JOHNSON LUMBER CORPORATION.

### Civil Action No. 3105

District Court, D. Oregon.

Feb. 19, 1947.

Goldstein, Galton & Galton, of Portland, Or. (Herbert B. Galton, of Portland, Or. of counsel), for plaintiff.

King & Wood of Portland, Or. (Robt. S. Miller and David H. Breuer, both of Portland, Or., of counsel), for defendant.

McCOLLOCH, District Judge.

The defendant mill company contends that two plans for paying its employees, including the plan here sued on, were scrutinized and approved by the Wages and Hours Administration.

Whether they did this or not, I think the practice of the Wages and Hours Administration, as disclosed at the trial, of circularizing employees and suggesting that they bring suits against their employers is highly reprehensible. See Appendix "A."

The tendency among present day administrative agencies to be partial on the side of the group or economic interest in whose behalf the agency was created, is, I suppose to be expected. But it is not to be expected that Government employees may at any time, any place, use their positions to stir up private litigation. Consider in this connection the activities of the Wages and Hours Administration in stirring up travel time cases in the Western lumber industry in the midst of the war. See Appendix "B".

APPENDIX "A"

In Reply Refer to
File No. 36-50116-c
AR:BMF

Address all
Communications to:

U. S. Department of Labor
Wage and Hour and Public Contracts Divisions
208 U. S. Court House, Old
Portland 4, Oregon
July 2, 1945

Mr. N. L. Hart
Toledo, Oregon
Dear Mr. Hart:

This office has recently completed an inspection of the C. D. Johnson Lumber Corp., Toledo, Oregon, to determine whether or not it was operating in compliance with the provisions of the Fair Labor Standards Act of 1938[1] and the Walsh-Healey Public Contracts Act.[2]

Inspection disclosed that the company had improperly paid some employees who were entitled to the benefits of the Fair Labor Standards Act. The firm has refused to make voluntary payment of wages due such employees as a result of violations which occurred prior to the date of our inspection.

The Fair Labor Standards Act provides a means for employees to enforce collection of such wages, liquidated damages, attorney's fees and court costs. Your attention is directed to Section 16(b) of the Act, a

---

[1] 29 U.S.C.A. § 201 et seq.    [2] 41 U.S.C.A. § 35 et seq.

copy of which is enclosed, which covers the rights of employees in this matter.

If you should desire any additional information with respect to your particular case, feel free to contact this office at any time.

Yours very truly,

/s/ Charles H. Elrey
Branch Manager

APPENDIX "B"

Release Monday
December 4, 1944

U. S. Department of Labor
Wage and Hour Division
165 West 46th Street
New York, N. Y.

Statement on Travel Time in the
West Coast Logging and Lumber
Industry

The future enforcement policy regarding the application of the Fair Labor Standards Act to travel time in the West Coast logging and Lumber Industry was announced today by L. Metcalfe Walling, Administrator of the Wage and Hour and Public Contracts Divisions. Mr. Walling's statement follows:

"After full consideration of the problems involved in the determination of whether employees in the logging and lumber industry are engaged in work or employment, for purposes of the Fair Labor Standards Act, while traveling to, from, or between the sites of logging and lumbering operations, I have concluded that the Wage and Hour and Public Contracts Divisions, in enforcing the act in the industry, will rely on the general principles announced in Interpretative Bulletin No. 13, interpreted in the light of the guidance provided by the Supreme Court in the case of Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, [321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949, 152 A.L.R. 1014]. This enforcement policy will become effective immediately, and will be applied prospectively for those employers who come into compliance as of this date. This means that for enforcement purposes the Divisions will not administratively require restitution prior to December fourth except in cases where wilful and continuing violations are indicated."

In explanation of the Divisions' position in this matter, Mr. Walling recalled that a survey of travel time in the West Coast Logging and Lumber Industry had been begun in the summer of 1941. However, before any final conclusions could be drawn from this survey, two new factors entered into the situation, Mr. Walling said. In the first place, wartime conditions brought about various changes regarding travel time, among these the rationing of tires and gasoline. In the second place, the Fifth Circuit Court of Appeals handed down an important decision on travel time in the iron mining industry which was appealed to the Supreme Court. Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 135 F.2d 320; Id., 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949, 152 A.L.R. 1014. It was believed desirable, therefore, to take no enforcement action, and express no further administrative opinions regarding travel time in the West Coast Logging and Lumber Industry, until the Supreme Court ruled on the question.

The Supreme Court, in the Tennessee Coal and Iron case mentioned above, set forth certain broad principles regarding travel time as hours worked. In October the Fourth Circuit Court of Appeals in the Jewell Ridge case (Local No. 6167, United Mine Workers of America v. Jewell Ridge Coal Corp., 145 F.2d 10), stated that these principles should be applied to travel time in the coal mining industry as well, thus reaffirming the Divisions' opinion that the travel time principles laid down in the Tennessee Coal and Iron case did not apply solely to iron mining but to travel time situations generally in other industries.